[Civ. No. 5068.  First Appellate District, Division Two.—April 24, 1925.]

## A. J. RENO, Respondent, v. THE AMERICAN ICE MACHINE COMPANY (a Corporation), Appellant.

[1] CORPORATE SECURITIES ACT — CONTRACT FOR SALE OF STOCK—ABSENCE OF APPLICATION TO ISSUE STOCK—INVALIDITY OF CONTRACT. Under the Corporate Securities Act, a contract between a corporation and an employee thereof for the sale to the latter of corporate stock, to be paid for from moneys retained out of the employee's salary, is void, where no application to issue the stock attempted to be sold to the employee, and containing a copy of the contract for the sale thereof, was ever made to the commissioner of corporations prior to the commencement of an action by the employee to recover moneys retained by the corporation out of his salary, and it was never possible for the corporation to have lawfully issued its stock to said employee.

[2] ID.—ACTION TO RECOVER MONEYS PAID ON STOCK—RATIFICATION OF CONTRACT—EVIDENCE—FINDING.—In such action by the employee to recover moneys retained by the corporation out of his salary, the defendant corporation cannot successfully contend that, although the original contract for the sale of the stock was void when made, it became possible for the defendant to perform the same at one period when it had certain unrevoked permits from the corporation commissioner, and that during that period the contract was ratified by the plaintiff by attending meetings of the stockholders and directors and thus assuming to act as such, and also by plaintiff's continued payments upon the purchase price of the stock, where the trial court found that under neither

1.  See 6 Cal. Jur. 780.
3.  See 6 R. C. L. 819; 6 Cal. Jur. 152.

permit to issue stock which defendant had been granted prior to the commencement of the action was defendant permitted to make the contract in question.

[3] CONTRACTS—VIOLATION OF EXPRESS MANDATE—PUBLIC POLICY—ESTOPPEL.—The doctrines of estoppel by conduct and ratification have no application to a contract which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no legal existence for any purpose and neither action nor inaction of a party to it can validate it and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity.

---

(1) 37 C. J., p. 277, n. 44.    (2) 13 C. J., p. 506, n. 83 New. (3) 13 C. J., p. 410, n. 88, p. 506, n. 82.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. J. Trabucco, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Roy A. Bronson and E. D. Bronson, Jr., for Appellant.

Sterling Carr for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment against it in an action brought to recover $891, alleged to be due to the plaintiff under facts revealed by the following findings, containing statements which were stipulated to be true:

On October 23, 1920, plaintiff and defendant entered into a contract by the terms of which plaintiff was employed as agent for the defendant in the sale, design, construction, and erection of its apparatus and in the direction and management of its business. The employment was to terminate at the pleasure of the board of directors of the defendant. Plaintiff was to be paid a salary of $49.50 a week. He subscribed to thirty-three shares of stock of defendant company at $100 a share, payable by a weekly credit on his salary account of $16.50. The agreement further provides that in the event of a termination of the agreement by either party, plaintiff should not offer for sale the stock so acquired by him to any third party without first offering the same to the stockholders of the company. The plaintiff entered the em-

ploy of defendant under the terms of said contract and continued in such employment until February 24, 1923, and duly and regularly performed all the terms of the contract by him to be performed. At the time the contract between the parties was entered into the defendant did not have a permit from the commissioner of corporations of this state to sell or dispose of its capital stock as required by the Corporate Securities Act. The defendant withheld from the salary of plaintiff $16.50 weekly during the period of employment, which sums aggregated $891 at the date the employment was terminated. Under date of June 29, 1921, defendant received a permit from the commissioner of corporations to sell certain of its shares of capital stock. Under date of October 14, 1921, the defendant received an amended permit from said commissioner and in neither of these permits was the contract between plaintiff and defendant referred to, passed upon or agreed to by the said commissioner. Said permits were revoked by said commissioner of corporations on June 21, 1922. Upon May 10, 1923, after the commencement of this action, the defendant filed an application with said commissioner for permission to issue its capital stock and a new permit was issued upon said application. On May 1, 1922, during the period of plaintiff's employment, the stockholders of the defendant company held a meeting, at which plaintiff was present and at which plaintiff made a motion that said stockholders apply to the commissioner of corporations for a permit to sell and issue its capital stock. On June 22, 1922, the directors of said defendant held a meeting at which plaintiff was also present.

No shares of stock of the defendant company were ever offered, issued, or tendered to plaintiff prior to the commencement of this action and the plaintiff has never taken or received any of the capital stock of said defendant; but subsequent to the date of the filing of the action defendant tendered to plaintiff nine shares of stock, which plaintiff refused to accept. Before bringing this action plaintiff demanded the return to him of the amount of his salary retained by the company.

As appellant correctly states, the only question presented by the appeal is the validity of the subscription agreement between the parties. If such agreement was not valid in its inception and did not become so, later, by reason of any

action of the plaintiff, it is conceded that the judgment must be affirmed.

[1] There is a contention by appellant, urged in one portion of its brief, that the original contract for stock, which contract was made in the absence of a permit to the corporation to issue said stock, was not void. The Corporate Securities Act, section 3 (Stats. 1917, p. 673), provides that no corporation shall take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do. Such application shall contain, among other things, a copy of any contract it proposes to make concerning the same.

No application to issue the stock attempted to be sold to plaintiff, and containing a copy of the contract for the sale thereof, was ever made to the commissioner of corporations prior to the commencement of this action, and it was never possible for the defendant company to have lawfully issued its stock to plaintiff. That being true, we think it must follow that the contract for the sale of the same was void. Section 12 of the Corporate Securities Act provides that any security issued without a permit shall be void. But appellant contends that this provision does not apply to a contract for the sale of stock. Can it be contended seriously that while an executed contract forbidden by statute is void, the same contract, while executory, is valid? If the issuance of the stock to plaintiff during the term of his employment by the defendant would have been void, certainly the contract for the issuance of the same was equally void.

[2] The next question raised by appellant is involved in the contention that, although the original contract was void when made, it became possible for the defendant to perform the same at one period when it had certain unrevoked permits from the commissioner, and that during that period the contract was ratified by the plaintiff by attending meetings of the stockholders and directors and thus assuming to act as such, and also by plaintiff's continued payments upon the purchase price of the stock. An answer to this contention is the finding of the trial court that under neither permit to issue stock which defendant had been granted prior to the commencement of this action was defendant permitted to make the contract involved here. [3] If this finding be a

misconstruction of the permits which were granted, nevertheless there remains the steadfast rule of law that one may not ratify a void contract—a contract contrary to an express statute. This is one of the distinctions between void and voidable contracts. The doctrines of estoppel by contract and ratification have no application to a contract which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no legal existence for any purpose and neither action nor inaction of a party to it can validate it and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity. (*Colby* v. *Title Ins. etc. Co.,* 160 Cal. 632, 644 [Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913]; *Lukens* v. *Nye,* 156 Cal. 498, 505 et seq. [20 Ann. Cas. 158, 105 Pac. 593].) The case of *Moore* v. *Moffatt,* 188 Cal. 1 [204 Pac. 220], relied upon by appellant as contrary to the doctrine we have just announced does not so impress us. That was not an action between the parties to a void contract, but an action by a trustee in bankruptcy of a corporation to recover the unpaid subscription price of stock for the benefit of creditors. That situation presents an exception to the rule above announced, which rule is suspended in the interests of innocent third persons who have relied upon the contract. (6 R. C. L. 820, sec. 215.)

The judgment is affirmed.

Preston, J., *pro tem.,* and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 22, 1925.